## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PRODUCERS COOPERATIVE OIL MILL, an Oklahoma Cooperative Corporation, <br><br> Plaintiff, <br><br> v. <br><br> ASPEN SPECIALTY INSURANCE COMPANY, a foreign Corporation, <br><br> Defendant. | Case No: CIV-14-703-C |

## COMPLAINT

COMES NOW Plaintiff, Producers Cooperative Oil Mill, and for its causes of action against the Defendant, Aspen Specialty Insurance Company, alleges and states:

1.    At all times material hereto, Plaintiff, Producers Cooperative Oil Mill, (hereinafter "Producers Co-Op") is an Oklahoma Cooperative that owns a commercial building located at 2500 South Council Road, Oklahoma City, Oklahoma.

2.    Defendant, Aspen Specialty Insurance Company, (hereinafter "Aspen") is a foreign corporation incorporated, domiciled and maintains its principal place of business in Boston, Massachusetts. Aspen is authorized to transact business within the State of Oklahoma and may be served with process through its designated service agent, identified as John Doak, Oklahoma

Insurance Commissioner, 5 Corporate Plaza, Suite 100, 3625 NW 56th Street, Oklahoma City, Oklahoma 73112.

3.     The amount in controversy exceeds $75,000.00 and this Court has diversity jurisdiction of this matter.

4.     The involved commercial building at all times relevant hereto was insured by Aspen.

5.      Based on the foregoing, this Court has jurisdiction over these parties and this subject matter and venue is proper herein.

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT AND BAD FAITH AGAINST DEFENDANT

1.     On May 31, 2013, a tornado caused a covered loss to the building.

2.     Producers Co-Op submitted a claim for the tornado damage to Aspen and, otherwise, complied with all conditions precedent to recovery under the subject insurance policy.

3.     Aspen breached the subject insurance contract by wrongfully refusing to pay any amount on the Producers Co-Op claim.

4.     Aspen breached the implied covenant of good faith and fair dealing in the insurance contract, in accord with its routine practice for the handling of such claims, in the following respects:

    a.     failing and refusing payment and other policy benefits on behalf of Producers Co-Op at a time when Aspen knew that it was entitled to those benefits;

2

b.    failing to properly investigate Producers Co-Op's claims and to obtain additional information both in connection with the original refusal and following the receipt of additional information;

c.    withholding payment of the benefits on behalf of Producers Co-Op knowing that Producers Co-Op's claims for those benefits were valid;

d.    refusing to honor Producers Co-Op's claims in some instances for reasons contrary to the express provisions of the policy and/or Oklahoma law;

e.    refusing to honor Producers Co-Op's claims in some instances by applying restrictions not contained in the policy;

f.    refusing to honor Producers Co-Op's claims in some instances by knowingly misconstruing and misapplying provisions of the policy;

g.    failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under these policies, to include Producers Co-Op's claims;

h.    not attempting in good faith to effectuate a prompt, fair and equitable settlement of Producers Co-Op's claims once liability had become reasonably clear;

i.    forcing Producers Co-Op, pursuant to its standard claims practice, to retain counsel in order to secure benefits Aspen knew were payable;

j.    failing to properly evaluate any investigation that was performed;

k.    refusing to consider the reasonable expectations of the insured;

l.    failing and refusing to properly investigate and consider the insurance coverage promised to their insured;

m.    issuing coverage and knowing they had insured the risk, knowing the nature of the risk and then refusing to honor the coverage they intended to issue,

n.    ignoring the known law of waiver and estoppel by refusing to provide benefits they knew were promised to their insured;

o.    Unreasonably delaying any prompt payment of policy benefits; and,

p.     refusing to fully investigate, properly evaluate and promptly pay at least those amounts of damage it found from the tornado,

all in violation of the implied covenant of good faith and fair dealing and resulting in  financial benefit to Aspen.

5.     As a direct result of Aspen's breach of contract and bad faith Producers Co-Op has suffered loss of the policy benefits, loss of the coverage promised by Aspen, additional damage as a result of delayed response, consequential damages resulting from inability to make needed decisions for the building, costs to mitigate damages and other damages.

6.     Aspen recklessly disregarded and/or intentionally and with malice breached its duty to deal fairly and act in good faith and Producers Co-Op is entitled to recover punitive damages.

WHEREFORE, Producers Co-Op, demands judgment against Aspen, in an amount in excess of $75,000.00 for compensatory damages and in an amount in excess of $75,000.00 for punitive damages plus interest, costs, attorney fees and all other relief which the Court deems just and equitable.

## SECOND CLAIM FOR RELIEF

### FALSE REPRESENTATION, CONCEALMENT AND DECEIT

Producers Co-Op realleges all previous allegations contained in paragraphs 1 – 6 and further alleges and states:

7.     The factual detail and particular who, what, when, and where, associated with this cause of action is set forth in this paragraph with as much

specificity as is currently known to the Producers Co-Op.  On and just prior to September 13, 2012, Mr. Larry Compton, on behalf of Producers Co-Op, communicated with Sweat & Crawford of Illinois, Inc., and various unknown brokers that communicated with representatives of Aspen in order to secure the involved policy of insurance issued effective September 13, 2012.  The Plaintiff is unaware at this time of the specific communications and other identifications of the persons involved in these communications which resulted in Aspen's issuance of the insurance policy to Producers Co-Op.  It was represented to Mr. Compton and Producers Co-Op that Aspen had agreed to provide insurance coverage for this building, including its roof, for losses to the building.  Aspen promised and agreed to provide coverage for the entire building, including the roof, without any exception, exclusion, or modification of any kind pertaining to the roof of the building.   Aspen issued a policy of insurance, Policy No. PRAAJDW12 effective September 13, 2012 which, again, promised insurance coverage including coverage for tornado damage for the entire building including the roof.  Aspen wholly failed to disclose any information that their coverage for the roof was compromised or negated in any fashion under the policy coverage that was promised to Producers Co-Op.  Producers Co-Op was provided a binder which, again, promised the insurance coverage for this commercial building without any exception pertinent to the roof.

After the initial issuance of the policy, there was additional underwriting notification and consideration by Aspen specific to the roof of this commercial

building.  The specifics of these facts are currently unknown to Productions Co-Op.  Aspen's property underwriting department sent a letter dated October 26, 2012.  Aspen contacted Producers Co-Op and inquired regarding the roof and, otherwise, satisfied themselves to continue in this insurance coverge, collecting the premium, and maintaining the insurance coverage for this entire building as previously promised to Producers Co-Op.  Aspen did not disclose at this time, that the roof appeared to have been non-servable for its intended purpose, that the roof was otherwise uninsurable, or that the roof might be considered to have no actual cash value and, thus, have no policy coverage for covered losses.  Aspen failed to disclose any information to Producers Co-Op to imply that their coverage for this building was impaired in any respect as a result of this further review or that the Co-Op would ever receive anything less than originally promised in connection with purchasing this policy.  In fact, these subsequent communications only acted to confirm that Aspen had underwrote and agreed to provide coverage for the roof, the same as with the rest of the building, and the same as had been originally promised in connection with taking the Producers Co-Op's premiums.  No one from Aspen disclosed or contended that the roof was beyond repair and required replacement prior to the policy being written or that it could not be eligible for any actual cash benefit payments.  This contention was first asserted by Aspen only after the tornado damage to the roof.

Aspen underwrote this building and otherwise undertook and promised to provide insurance for this building, including insurance covering the roof.  Aspen

6

agreed to pay for the cost of repairing damage to the building, including the roof, that resulted from a covered loss.  Aspen did not raise any issues pertaining to the roof, disclose any intention not to provide coverage for tornado damage to the roof, nor did it request or require any work, repair, or other requirement in agreeing to insure the roof.  In all respects, Aspen indicated to Producers Co-Op that it was satisfied enough with the condition of the roof, its serviceability, its ability to shed water, etc., in order to issue insurance coverage for the same and to accept Producer Co-Op's $54,000 in premium for such coverage.  Aspen promised this roof coverage to Producers Co-Op, accepted Producers Co-Op's premiums to provide that insurance, and failed to disclose that the promised coverage would be compromised in any fashion as a result of the current condition of the roof, despite being made aware of the same.  Aspen did not provide Producers Co-Op any of the details of its inspection or failure to inspect the roof at the time of the promises of coverage.  In Aspen's issuance of this policy coverage, its underwriting of this insurance risk, and its calculation and collections of premiums from Producers Co-Op at all times promised, charged for, and intended to provide coverage for such tornado damage to this roof.  At all such times, Aspen consistently failed to disclose that the current condition of the roof would in any way compromise or affect the policy coverage provided for damage from such a covered loss. Aspen never disclosed that it would not pay for repair of tornado damage to the roof. Producers Co-Op will immediately

supplement any factual details with specificity that the Producers Co-Op can identify that are not set forth above.

8.     The involved commercial building suffered tornado damage on March 31, 2013, including extensive damage to the roof of the building causing new, wide-spread leaking and associated damage to the interior and other components of the building.  Aspen took the position that the roof had no actual cash value and that there could be no policy benefits payable for the roof because it had no actual cash value.  Aspen explained that the policy was written on an actual cash value only basis and that Aspen considered that the actual cash value of the roof was negligible or zero dollars.  Therefore, there could be no benefits for tornado damage to the roof, irrespective of the extent of tornado damage.

9.     The described representations were material and false and made at a time when Aspen knew they were false, or made as a positive assertion recklessly, without any knowledge of the truth.

10.     The described representations were made with the intention that Producers Co-Op should act upon them in purchasing and paying for this property policy and the Producers Co-Op did rely upon them to their detriment.

11.     The described representations were words or conduct which creates an untrue or misleading impression of the actual past or present facts in the mind of the Producers Co-Op.

12.    The described omissions and non-disclosure involved concealing and failing to disclose facts which Aspen had a duty to disclose.  Such facts were material and were concealed or failed to be disclosed with intent of creating a false impression of the actual facts in the mind of the Producers Co-Op.

13.    Aspen concealed or failed to disclose these facts with the intention that they be acted upon by Producers Co-Op and Producers Co-Op did act in reliance upon it to their detriment.

14.    The described false representations, concealment and deceit induced the Producers Co-Op to purchase this property insurance policy and Producers Co-Op, acting in reliance thereon, purchased and paid for the policy and lost the opportunity to secure this coverage elsewhere.

15.    As a direct result of the described false representations, concealment, and deceit, Producers Co-Op suffered loss of the policy coverage promised to them and other consequential damages as a result of not knowing what insurance coverage would be honored for this loss and other consequential damages.

16.    Aspen's false representations, concealment and deceit, were with reckless disregard for the rights of others and/or were done intentionally and with malice and therefore Producers Co-Op is entitled to recover punitive damages.

**WHEREFORE**, Producers Co-Op prays for judgment against Aspen for its damages in an amount in excess of $75,000.00 for compensatory damages and

in an amount in excess of $75,000.00 for punitive damages with interest, costs, attorney fees and all other relief which the Court deems just and equitable.

MANSELL ENGEL & COLE

s/Mark A. Engel
Steven S. Mansell, OBA #10584
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
101 Park Avenue, Suite 665
Oklahoma City, OK 73102
T: (405) 232-4100 ** F: (405) 232-4140
Email:  mansell-engel@coxinet.net

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**          **ATTORNEYS FOR PLAINTIFF**